**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Olga Issaenko,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>University of Minnesota, Martina Bazzaro,<br>Regents of the University of Minnesota,<br>Richard B. Beeson, Dean E. Johnson, Clyde E.<br>Allen, Laura M. Brod, Linda A. Cohen,<br>Thomas W. Devine, John R. Frobenius, David<br>M. Larson, Peggy E. Lucas, David J.<br>McMillan, Abdul M. Omari, Patricia S.<br>Simmons, Karen Hanson, Douglas Yee,<br>Tucker W. LeBien, Linda Carson, and Frances<br>Lawrenz,<br><br>　　　　Defendants. | **Case No. 13-cv-3605 (JRT/SER)**<br><br><br>**REPORT AND RECOMMENDATION** |

Olga Issaenko, *Pro se*, Minnetonka, Minnesota.

Brian J. Slovut, Esq., University of Minnesota, Minneapolis, Minnesota, for Defendants.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendants Frances Lawrenz and Tucker W. LeBien's Motion for Judgement on the Pleadings [Doc. No. 77], which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), and District of Minnesota Local Rule 72.1. (Order of Reference) [Doc. No. 92]. For the reasons stated below, the Court recommends granting the motion in part and denying the motion in part.

**I.　　BACKGROUND**

The factual background of this case is described in detail in the Honorable John R. Tunheim's Memorandum Opinion and Order dated September 30, 2014 (the "September 2014

Order"). *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985 (D. Minn. 2014) (Tunheim, C.J.) [hereinafter "*Issaenko I*"]. In short,

> [t]his case arises out of Plaintiff Olga Issaenko's [("Issaenko")] brief tenure as a research scientist in the laboratory of Defendant Dr. Martina Bazzaro [("Bazzaro")] at the University of Minnesota's Masonic Cancer Center. The heart of Issaenko's claims is that, without Bazzaro's knowledge or assistance, she developed written materials and figures based on experiments and research that she performed during her employment at the Masonic Cancer Center and that Bazzaro later claimed to own the copyrights in those materials. Issaenko [brought] eleven statutory, constitutional, and common law claims against Bazzaro in her official and individual capacities, the University of Minnesota and the Regents of the University of Minnesota . . . , as well as seventeen employees and regents of the University . . . in their official capacities.

*Id.* at 992–93. Chief Judge Tunheim granted Defendants' Motion to Dismiss the First Amended Complaint in part and permitted Issaenko to file a second amended complaint with respect to some claims. *See id.* at 1040. Specifically, Chief Judge Tunheim denied the Motion to Dismiss with respect to Issaenko's claims against Bazzaro in her individual capacity for promissory estoppel and tortious interference. *Id*. Chief Judge Tunheim granted in part and denied in part Issaenko's Motion for Leave to Amend Plaintiff's First Amended Complaint ("Motion to Amend"), permitting Issaenko to add only allegations against Defendants Frances Lawrenz ("Lawrenz") and Tucker W. LeBien ("LeBien") for tortious interference. *Id.*[1]

Following Chief Judge Tunheim's September 2014 Order, Issaenko filed her Second Amended Complaint. Defendants Bazzaro, Lawrenz, and LeBien filed an answer, and discovery began. *See, e.g.*, (Answer of Defs. Bazzaro, Lawrenz and LeBien to Second Am. Compl.) [Doc. No. 68]; (Pretrial Scheduling Order) [Doc. No. 72].

---

[1]   Lawrenz is the associate vice president for research and an employee of the University of Minnesota. (Second Am. Compl.) [Doc. No. 67 ¶ 27]. LeBien is the vice dean for research at the medical school and/or associate vice president for the Academic Health Center Office of Research, and an employee of the University of Minnesota. (*Id.* ¶ 26).

2

On April 13, 2015, Lawrenz and LeBien (collectively, "Defendants") filed the instant Motion for Judgment on the Pleadings, arguing that the tortious interference claim—the only claim against them—should be dismissed. (Mem. of Law in Supp. of Defs.' Mot. for J. on the Pleadings, "Mem. in Supp.") [Doc. No. 79]. Specifically, Defendants note that the tortious interference claim is based on defamatory statements and that Chief Judge Tunheim found Issaenko's proposed defamation claim against the same defendants futile based on their affirmative defense of qualified privilege. (*Id.* at 1–2). Because the tortious interference claim is based on the same defamatory statements that Chief Judge Tunheim found were futile, Defendants argue that the tortious interference claim must also be dismissed. (*Id.* at 2).

Additionally, Bazzaro, although not named in this motion as a moving defendant, asks the Court to exercise its discretion and decline to exercise supplemental jurisdiction over the remaining state law claims against her.[2] (*Id.* at 10).

Issaenko's response was due on May 4, 2015, and none was filed. *See* D. Minn. L.R. 7.1(c)(2). On May 19, 2015, Issaenko's attorney, Damon Ward ("Ward"), moved to withdraw. The Court granted the motion and stated that withdrawal would be effective thirty days later to give Issaenko time to find substitute counsel. (Order Dated August 19, 2015) [Doc. No. 91].

Chief Judge Tunheim referred the Motion for Judgment on the Pleadings, and the Court issued a briefing schedule. (Order of Reference); (Text Only Entry Dated Sept. 29, 2015) [Doc. No. 95]. Issaenko, unable to find substitute counsel, filed a memorandum in opposition to the Motion for Judgment on the Pleadings *pro se*, and Defendants filed a reply. (Pl.'s Mem. of Law

---

[2]   At the time Defendants filed the instant motion, they stated that state court litigation against some of the same defendants included the same tortious interference claim as this case. (Mem. in Supp. at 10). At the hearing, Defendants informed the Court that the state court litigation had concluded following a motion for summary judgment.

in Opp'n to Mot. for J. on the Pleadings, "Mem. in Opp'n") [Doc. No. 97]; (Reply Mem. in Supp. of Mot. for J. on the Pleadings, "Reply") [Doc. No. 100].

The Court heard oral argument on December 1, 2015, and ordered supplemental briefing regarding whether qualified immunity applies to the tortious interference claim against Defendants. (Minute Entry Dated Dec. 1, 2015) [Doc. No. 102]. Because Defendants determined that qualified immunity does not apply, Issaenko did not respond to Defendants' letter and the Court will not address that issue in this Report and Recommendation. *See* (*id.*); (Letter to Mag. J. Dated Dec. 4, 2015) [Doc. No. 103].

## II.   DISCUSSION

Before beginning the analysis, the Court provides additional information regarding the defamation and tortious interference claims in the First Amended Complaint and Chief Judge Tunheim's September 2014 Order.

### A.   Additional Background

Based on her research, Issaenko wrote an article in April 2011 "to be published in a scientific journal." (First Am. Compl.) [Doc. No. 7 ¶¶ 94–95]. Issaenko alleges Defendants intimidated and threatened her, and made "allegations of unlawful and/or illegal activity." (*Id.* ¶ 96). When Issaenko submitted her manuscript to the Journal of Molecular Cancer Therapeutics, Bazzaro allegedly "made false allegations to the journal that [Issaenko] was under a 'misconduct investigation' by the University of Minnesota." (*Id.* ¶ 97). Issaenko alleges Bazzaro "engaged others into further contacting the journal with more false allegations [and a]s a result, the Journal of Molecular Cancer Therapeutics refused to publish [Issaenko's] article." (*Id.*).

Instead, Issaenko published the article in the Cell Cycle journal on May 1, 2012. (*Id.* ¶ 98). Issaenko alleges "Defendants contacted the Cell Cycle journal and the Publisher and set

forth false allegations against [Issaenko]." (*Id.*). LeBien authored the letter to which Issaenko refers. (Letter from LeBien, Univ. of Minn., to Mikhail V. Blagosklonny, Cell Cycle (Dec. 18, 2012), Ex. 25, Attached to First Am. Compl.) [Doc. No. 7-1 at 93].[3] LeBien said, in relevant part,

> Dr. Bazzaro and the University of Minnesota did not give Dr. Issaenko permission to use the data or materials from Dr. Bazzaro's laboratory for independent publication purposes. In fact, University officials explicitly informed Dr. Issaenko that she was not authorized to submit manuscripts based on research or materials from Dr. Bazzaro's laboratory.
>
> Based on my review of the above referenced paper and my knowledge of the research reported by Dr. Issaenko, it is my opinion that a substantial portion of the data reported in the paper were generated in Dr. Bazzaro's laboratory.

(*Id.*). LeBien asked Cell Cycle to review the matter to determine if the paper meets its "authorship and publication requirements." (*Id.*). Cell Cycle retracted the article on May 1, 2013. (*Id.* at 94).

Issaenko argues the retraction was temporary, and that "Defendants then threated the journal and demanded that it publish defamatory statements about [Issaenko] and her work." (First Am. Compl. ¶ 98). Cell Cycle published an Expression of Concern in May 2013, noting that there was an ongoing dispute between Issaenko and Bazzaro about the research. (Expression of Concern, Ex. 26 at 96, Attached to First Am. Compl.); *see also* (First Am. Compl. ¶ 98). In August 2013, Cell Cycle published a Comment on Expression of Concern. (First Am. Compl. ¶ 98). Cell Cycle stated that the University of Minnesota contacted it and suggested a different Expression of Concern. (Comment on Express of Concern, Ex. 26 at 98, Attached to First Am. Compl.). Cell Cycle published both the original and suggested Expressions of Concern and stated, "This conflict appears to extend past the bounds of this journal, and the publisher wishes

---

[3]   Because all exhibits were filed as one document, the Court cites the page numbers assigned by CM/ECF when referencing the exhibits attached to the First Amended Complaint.

to remain impartial. We leave it to the two parties involved to settle this matter in an appropriate venue." (*Id.*).

### 1. Defamation Claim

Issaenko's defamation claim was based on the statements Defendants made to the journal of Molecular Cancer Therapeutics and Cell Cycle. *See* (First Am. Compl. ¶¶ 158–80). In particular, Chief Judge Tunheim summarized her defamation claim as follows:

> The basis of Issaenko's defamation claim is her allegation that Defendants made and sent statements and correspondence to Cell Cycle "which falsely stated that Defendants owned data and copyrighted information found in Dr. Olga Issaenko's scientific article . . . published in" Cell Cycle and that these statements were "calculated to and in fact did imply, connote, and insinuate that Dr. Olga Issaenko improperly took, appropriated, and used data and information allegedly belonging to Defendants." ([First] Am. Compl. ¶ 159; *see also id.* ¶¶ 160, 162.) Issaenko also alleges that Defendants made defamatory statements when they failed to disclose to Cell Cycle that Issaenko had provided the at-issue data to Bazzaro (*id.* ¶ 161), and when they notified Cell Cycle that they had "confirmed ownership of data" in Issaenko's article (*id.* ¶ 163 (internal quotation marks omitted)). Issaenko also relies on Defendants' correspondence with the Journal of Molecular Cancer Therapeutics "falsely alleging that Dr. Olga Issaenko was under a 'misconduct investigation' by the University of Minnesota." (*Id.* ¶ 164.) Issaenko additionally alleges "false statements in the Memorandum issued by Defendants on September 10, 2010 and circulated within the community that Dr. Olga Issaenko inappropriately used and/or shared data." (*Id.* ¶¶ 165-167.) Finally, Issaenko relies on other communications with Cell Cycle in which Defendants explained that Issaenko worked under Bazzaro's direction, some of the data for the paper was generated in Bazzaro's lab, and referred to Issaenko's notebooks as Bazzaro's notebooks. (*Id.* ¶¶ 169-174.) Issaenko contends that these false statements damaged her reputation. (*Id.* ¶¶ 177-178.).

*Issaenko I*, 57 F. Supp. 3d at 1029. Chief Judge Tunheim dismissed the defamation claims against Bazzaro on statute of limitations grounds. *Id.* at 1029–30.

Chief Judge Tunheim reviewed Issaenko's proposal to add new facts to the defamation claim in her proposed second amended complaint and to bring the claim against other defendants, including Lawrenz and LeBien. *Id.* at 1030–37. Chief Judge Tunheim found the proposed defamation claims against Lawrenz and LeBien were futile because the emails

provided in support of the claim were not sent by LeBien or Lawrenz, nor did they fall within the statute of limitations. *Id.* at 1032. Chief Judge Tunheim also found that, to the extent the proposed second amended complaint alleged a defamation claim against LeBien and Lawrenz based on letters and a report sent to Cell Cycle, the claim was futile because the statements made in those documents were protected by qualified privilege. *Id.* at 1032–35.[4]

### 2. Tortious Interference Claims

Chief Judge Tunheim summarized Issaenko's tortious interference claim as follows:

> Issaenko alleges that at all relevant times she "was poised to secure grants, publication of results, and employment based upon her scientific discoveries" but that "Defendants' unjustified and improper actions in suggesting that Dr. Olga Issaenko misappropriated data and compounds and used images and data without permission and/or authorization in Plaintiff's scientific article . . . published in Cell Cycle, in attempting to restrict Dr. Olga Issaenko's use and publication of her Copyrighted Images and Works, in causing her article to be retracted from publication, in blocking her potential employment opportunities, and in defaming her in her trade and employment/business have caused pecuniary harm including financial instability to Dr. Olga Issaenko having induced or caused others not to enter into employment relationships, publish articles, and enter into research arrangements, and constitutes tortious interference with her prospective business, employment, and economic advantage."([First] Am. Compl. ¶¶ 182-183.) With respect to specific opportunities, Issaenko alleges that she applied for and was almost offered positions with two professors at the University, but they withdrew the offers shortly after reviewing Issaenko's personnel file and speaking with Bazzaro. (*Id.* ¶¶ 184-186.) Finally, Issaenko alleges that she "enjoyed a reasonable expectation of economic advantage or benefit in her employment, publishing opportunities, and securing grants" and that "Defendants knew or should have known of [her] reasonable expectations." (*Id.* ¶¶ 187-188.)

*Id.* at 1036. Chief Judge Tunheim denied the motion to dismiss with respect to the tortious interference claim against Bazzaro individually. *Id.* at 1036–38.

Chief Judge Tunheim noted that the proposed second amended complaint did not seek to add facts related to the tortious interference claim. *Id.* at 1038. Instead, it sought to add the

---

[4] Chief Judge Tunheim also found that the proposed second amended complaint did not state a claim for defamation against Bazzaro. *Issaenko I*, 57 F. Supp. 3d at 1035–36.

7

seventeen employees and regents of the University of Minnesota in their individual capacities. *Id*. The "tortious interference claim includes allegations that Defendants' actions in communicating with Cell Cycle caused Issaenko to lose economic opportunities." *Id.* Further, Issaenko specified in the proposed second amended complaint that Lawrenz and LeBien authored these communications. *Id.* Chief Judge Tunheim stated,

> [b]ecause Defendants have offered no argument that the tortious interference claim related to the Cell Cycle article are deficient, the Court concludes that these allegations are sufficient to state a claim against these two defendants in their individual capacities. Accordingly, the Court finds that amendment would not be futile with respect to this claim, and therefore will grant the motion to amend to the extent it seeks to include allegations pertinent to the tortious interference claim against LeBien and Lawrenz in their individual capacities.

*Id.* He noted that "a plaintiff is not permitted to avoid defenses to a defamation claim by challenging the defamatory statements under another doctrine" but concluded that "[b]ecause Defendants have not raised this as a basis for dismissal of Issaenko's tortious interference claim, . . . the Court has not considered whether the Defendants would also be entitled to qualified privilege with respect to this claim." *Id.* at 1038 n.24 (internal quotation marks omitted).

The text of the tortious interference claim in the Second Amended Complaint—the only claim at issue in this Report and Recommendation—is identical to the text of the tortious interference claim in the First Amended Complaint. *Compare* (First Am. Compl. ¶¶ 181–90) *with* (Second Am. Compl. ¶¶ 200–09).

### 3.   Motion for Judgment on the Pleadings

Defendants argue that the tortious interference claim should be dismissed because the same affirmative defense—qualified privilege—that applied to the dismissed defamation claim also applies to the tortious interference claim. (Mem. in Supp. at 5–6). They argue Issaenko

8

cannot avoid that defense by challenging the conduct using a different legal theory. (*Id.*); *see also* (*id.* at 5–9).

### B.   Legal Standard

When considering a motion for judgment on the pleadings under Rule 12(c), a court "applies the same standard used to address a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 775 (D. Minn. 2009) (Schiltz, J.) (citing *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir.2009)).

> Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."

*Id.* (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court "does not defer to any legal conclusions or formulaic recitations of the claims' elements." *Folger v. City of Minneapolis*, Civil No. 13-3489 (SRN/JJK), 2014 WL 4187504, at *3 (D. Minn. Aug. 22, 2014) (Nelson, J.) (citing *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1027 (8th Cir. 2011)).

A motion for judgment on the pleadings is appropriate "when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings and related materials." *Id.* (internal quotation marks omitted). "A fact is material if its determination in favor of the non-moving party could affect the result in the case." *Jenkins v. S. Farm Bureau Cas.*, 307 F.3d 741, 744 (8th Cir. 2002); *see also King v. Dingle*, 702 F. Supp. 2d 1049, 1063 (D. Minn. 2010) (Montgomery, J.) ("A disputed fact is 'material,' if it must inevitably be resolved, and that resolution will determine the outcome of the case.").

An affirmative defense may be grounds for granting judgment on the pleadings if the affirmative defense is apparent on the face of a complaint. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2014).

### C. Analysis

As an initial matter, the Court addresses Issaenko's argument that Defendants failed to meet-and-confer with her or her former attorney prior to filing the instant motion. (Mem. in Opp'n at 8–9); *see also* (Email from Damon Ward to Issaenko (Oct. 30, 2015), Ex. 1, Attached to Third Decl. of Issaenko in Opp'n to Mot. for J. on the Pleadings.) [Doc. No. 98-1 at 2];[5] (Meet-&-Confer Statement) [Doc. No. 99]. Defendants' meet-and-confer statement avers that Issaenko, in addition to her counsel in this case and the state case against some of the same defendants, participated in a mediation with Defendants, which Defendants believe satisfies their meet-and-confer obligation. (Meet-&-Confer Statement). Although the Court is hesitant to conclude that a meaningful conversation about the instant motion took place during the referenced mediation, Issaenko has not alleged any prejudice from Defendants' failure to meet and confer. The purpose of this requirement is to encourage the parties to work together to resolve or narrow the dispute presented to the Court, and Issaenko does not state that there is some circumstance where she would have agreed not to oppose the instant motion. Therefore, the Court declines to recommend denial of this motion based on any failure to meet and confer.

The Court next addresses the motion on its merits. As noted above, Defendants argue that "[t]his Court has already concluded that the allegedly defamatory statements in the Cell Cycle report do not support a viable defamation claim against LeBien and Lawrenz. These same

---

[5] The page numbers cited are those assigned by CM/ECF.

statements, therefore, cannot be used to support a tortious interference claim against them." (Mem. in Supp. at 5) (footnote omitted).

There are no defamation claims pending against Lawrenz and LeBien in this case. *Issaenko I*, 57 F. Supp. 3d at 1040. Nonetheless, to the extent Defendants argue their motion requires the Court to re-evaluate whether qualified privilege applies to the dismissed defamation claim, the Court finds that it does. Chief Judge Tunheim denied the Motion to Amend to the extent it sought to bring a defamation claim against Lawrenz and LeBien based on letters and a report Lawrenz and LeBien sent to Cell Cycle because they were entitled to the qualified privilege defense.[6] *Id*. at 1032–33 ("The Court concludes that the allegations in the [proposed] Second Amended Complaint demonstrate, as a matter of law, that Lawrenz and LeBien are entitled to a qualified privilege in connection with the statements they made to Cell Cycle regarding the Copyrighted Works."). Chief Judge Tunheim's opinion was based on the proposed second amended complaint, which was then formally filed in its entirety.[7] *Id.* at 1032–33; *compare* (Proposed Second Am. Compl., Attached to Mot. for Leave to Amend Pl.'s First Am. Compl.) [Doc. No. 38-1] *with* (Second Am. Compl.). Similarly, Chief Judge Tunheim relied on Exhibit 28, a report titled "Comparison of Figures in Issaenko Cell Cycle Paper with Data in Bazzaro Laboratory," which was filed both with the proposed second amended complaint and the formal Second Amended Complaint. *Issaenko I*, 57 F. Supp. 3d at 1032; *compare* (Ex. 28, Attached to Decl. of Damon L. Ward in Supp. of Mot. to Amend) [Doc. No. 41-2 at 5–8] *with*

---

[6] Chief Judge Tunheim held that considering the qualified privilege defense was appropriate here when the privilege was "apparent from the face of the complaint." *Issaenko I*, 57 F. Supp. 3d at 1033 (citing *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 1000 (D. Minn. 2013) (Doty, J.)).

[7] In other words, although Chief Judge Tunheim's Order stated that the only claim permitted in the proposed second amended complaint was the tortious interference claim against Lawrenz and LeBien, Issaenko, through her former counsel, filed the proposed second amended complaint in its entirety. *See Issaenko I*, 57 F. Supp. 3d at 1040.

11

(Ex. 28, Attached to Second Am. Compl.) [Doc. No. 67-2 at 5–8].[8] Thus, the pleading before this Court is the same pleading that Chief Judge Tunheim considered.

The Court relies on Chief Judge Tunheim's explanation of qualified privilege:

> "For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith and must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Bol* [v. Cole], 561 N.W.2d [143,] 149 [(Minn. 1997)] (internal quotation marks omitted).
>> The existence of a qualified privilege "is a matter of law for the court." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 920 (Minn. 2009). As the Eighth Circuit has explained: "'Th[e] qualified privilege analysis encompasses a two-step approach to determining whether the privilege applies. First, to establish the existence of the privilege, the defendant bears the burden of proving the communication was: (1) made upon a proper occasion, (2) made from a proper purpose, and (3) based upon reasonable and probable grounds. Whether the employer had a proper purpose and whether the employer had a proper occasion in making a communication are always questions of law for the court to decide. Whether the employer had reasonable and probable grounds for making the statement is also generally a question of law for the court, unless the evidence permits of more than one conclusion, when the question becomes one of fact for the jury.'" *Sherman v. Rinchem Co.*, 687 F.3d 996, 1008 (8th Cir. 2012) (quoting *Keenan v. Computer Assocs. Int'l, Inc.*, 13 F.3d 1266, 1269–70 (8th Cir. 1994)).

*Issaenko I*, 57 F. Supp. 3d at 1032–33.

The Court concludes that, for the same reasons articulated in Chief Judge Tunheim's September 2014 Order, qualified privilege applies with respect to any defamation claim against Lawrenz and LeBien. *See id.* at 1030–37. Specifically, qualified privilege applies because Lawrenz and LeBien made the statements on a proper occasion and for a proper purpose, "to protect Defendants and the public from dishonest behavior by Issaenko," and because Defendants conducted "an adequate investigation that was sufficient to provide them with reasonable or probable cause to make the at-issue statements." *Id.* at 1034. Additionally, the Second Amended compliant does not contain an allegation that Lawrenz and LeBien acted with malice, which is required to defeat the application of qualified privilege. *See id.* at 1034–35.

---

[8] The page numbers refer to those assigned by CM/ECF.

Issaenko argues qualified privilege does not apply because she was not a University of Minnesota employee at the time of Defendants' actions, Defendants acted beyond the scope of their respective areas of scientific expertise and beyond their administrative capacities, Defendants failed to conduct an investigation consistent with the University of Minnesota's policies, and Defendants knew their statements were false. *See* (Mem. in Opp'n at 12, 29–46).

To the extent Issaenko relies on matters that are outside the pleadings, the Court declines to consider them and convert the instant motion into a motion for summary judgment. *See Surgical Synergies, Inc. v. Genesee Assoc., Inc.*, 432 F.3d 870, 873 (8th Cir. 2005) (stating that "[w]here the district court considers matters outside the pleadings, a motion for judgment on the pleadings shall be treated as one for summary judgment." (internal quotation marks omitted)); *see also Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (stating that "[o]ur court has interpreted the phrase 'matters outside the pleadings' to include any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings" and "[s]tatements of counsel at oral argument raising new facts not alleged in the pleadings constitute 'matters outside the pleadings' and, if considered by the district court, require treatment of a Rule 12(b)(6) motion to dismiss as one for summary judgment" (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 12(d). Therefore, the Court cannot consider Issaenko's arguments to the extent they are based on documents that are outside the pleadings. *See* (Mem. in Opp'n at 44–46).

Issaenko refers to websites hosted by the University of Minnesota to support her arguments that Defendants acted outside the scope of their scientific areas of expertise and their administrative capacities and that Defendants did not conduct an investigation in compliance with the University of Minnesota's policies. (Mem. in Opp'n at 31–39). The parties do not

13

address whether documents from a public university's website are matters of public record. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (stating that a court "may consider some materials that are part of the public record" (internal quotation marks omitted)). Further, Issaenko refers to other University of Minnesota websites in the Second Amended Complaint. *See* (Second Am. Compl. ¶¶ 41, 42, 48). Nonetheless, the Court agrees with Chief Judge Tunheim's analysis that qualified privilege applies because "the statements were based on an effort to protect Defendants and the public from dishonest behavior by Issaenko, which serves the purpose of the qualified privilege protection." *Issaenko I*, 57 F. Supp. 3d at 1034. Thus, Issaenko's argument that she was not an employee does not undermine this analysis or the application of qualified privilege. To the extent Issaenko argues Defendants were not acting for a proper purpose, the Court cannot infer that Defendants acted for an improper purpose in light of their roles as administrators with responsibilities for research at the University of Minnesota.

Additionally, to the extent Issaenko argues that Defendants' investigation was inconsistent with University of Minnesota policies, that argument does not undermine the application of qualified privilege. For the purposes of the privilege, Defendants were required to have "'reasonable and probable grounds'" to make the statement. *Issaenko I*, 57 F. Supp. 3d at 1033 (quoting *Sherman*, 687 F.3d at 1008)). "An employer lacks probable or reasonable grounds for making a defamatory statement if that employer has failed to investigate and instead relied only on other potentially biased employees' statements or hearsay from unidentified sources." *Walker v. Wanner Eng'g, Inc.*, 867 F. Supp. 2d 1050, 1054 (D. Minn. 2012) (Montgomery, J.). That did not happen here. In the course of Defendants' investigation, they reviewed Issaenko's manuscript and "compared each table and figure to materials found in Bazzaro's lab prior to

drawing conclusions about the propriety of Issaenko's use of the materials." *Issaenko I*, 57 F. Supp. 3d at 1034. The Court agrees with Chief Judge Tunheim that this investigation was reasonable for the purposes of applying qualified privilege. The University of Minnesota's policies and whether Defendants adhered to them does not change this determination.

Defendants argue that Issaenko cannot use the same factual circumstances—the letters and report to Cell Cycle—to support her tortious interference claim against them. (Mem. in Supp. at 5) (citing *Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 566 F. Supp. 2d 962, 969 (D. Minn. 2008) (Tunheim, J.); *Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975)).

When a claim is based on allegedly defamatory statements, regardless of the label of the claim, any privilege that applies to the allegedly defamatory statements applies with equal force to any other claims grounded in the same conduct. *Guzhagin*, 566 F. Supp. 2d at 969 ("[A] Minnesota plaintiff is not permitted to avoid defenses to a defamation claim by challenging the defamatory statements under another doctrine."); *MSK EyEs Ltd. v. Wells Fargo Bank*, No. 05-999 (DSD/SRN), 2007 WL 1965549, at *8 (D. Minn. July 3, 2007) (Doty, J.) ("[R]egardless of creative labeling, claims that arise out of purported defamatory statements are properly analyzed under the law of defamation."); *Pinto v. Internationale Set, Inc.*, 650 F. Supp. 306, 309 (D. Minn. 1986) (Murphy, J.) ("[A] plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defamation"); *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 310 (Minn. 2007) ("Although appellant frames its claims as breach of confidences, invasion of privacy, and civil conspiracy, the basis of appellant's complaint is that Newgard made false statements when she knew that those statements would harm the firm. Regardless of the label, appellant's claims are in essence defamation claims; they are claims that arise as a consequence of Newgard's purported defamatory statements. Since we determine that appellant's claims for breach of

confidences, invasion of privacy, and civil conspiracy sound in defamation, we need not reach the question of whether absolute privilege applies to claims not sounding in defamation, and we find that absolute privilege operates to bar all of the claims at issue on this appeal.").

Here, Chief Judge Tunheim described the scope of the tortious interference claim permitted to be filed against Lawrenz and LeBien in the Second Amended Complaint. *Issaenko I*, 57 F. Supp. 3d at 1038. Specifically, Chief Judge Tunheim permitted the claim only to the extent it was based on communications Lawrenz and LeBien authored and sent to Cell Cycle. *Id.* In other words, to the extent the tortious interference claim in the Second Amended Complaint is based on other employment opportunities Issaenko lost at the University of Minnesota, this claim was not permitted to go forward.[9] *See id.* 1036–38. As a result, the communications that are the basis for the tortious interference claim are the same statements on which the dismissed defamation claim was based. *Compare* (First Am. Compl. ¶¶ 159, 160, 162, 163, 169–74) *with* (Second Am. Compl. ¶ 206). Therefore, the qualified privilege that Chief Judge Tunheim and this Court found prevented Issaenko from maintaining her defamation claim against Lawrenz and LeBien likewise prevents Issaenko from maintaining her tortious interference claim against Lawrenz and LeBien.[10] *See, e.g.*, *Guzhagin*, 566 F. Supp. 2d at 969. In other words, even if all of Issaenko's allegations are accepted as true and all reasonable inferences are drawn in her favor,

---

[9] As stated above, the tortious interference claims in the First and Second Amended Complaints are identical. *Compare* (First Am. Compl. ¶¶ 181–190) *with* (Second Am. Compl. ¶¶ 200–09); *see also* (Proposed Second Am. Compl.–Redlined, Attached to Mot. for Leave to Amend Pl.'s First Am. Compl.) [Doc. No. 38-2 ¶¶ 192–201].

[10] Even if the more prudent course of action would have been for Defendants to raise this issue in opposition to Issaenko's Motion to Amend, nothing prevents them from raising the issue at this stage. *Cf.* (Mem. in Opp'n at 11).

Issaenko is not entitled to relief for the tortious interference claim because Lawrenz and LeBien are entitled to qualified privilege.[11]

Issaenko makes two arguments related to her *pro se* status. First, Issaenko argues she was not served well by her former attorney. (Mem. in Opp'n at 3 n.2). While unfortunate and perhaps true, this issue is not before the Court nor can it be addressed in this forum. Second, Issaenko argues the "Court has refused to refer this case to the Early Settlement Conference program and allow additional time [for] Plaintiff to respond to Defendant[s'] Motion, as requested by a volunteer attorney acting for Plaintiff through the Pro-Se Project." (*Id*. at 9). Civil litigants have no constitutional right to counsel, and therefore, Issaenko is not entitled to a referral to the Early Settlement Conference Program. Further, no volunteer attorney noticed an appearance on Issaenko's behalf. Therefore, the Court could not engage in an informal conversation with an attorney purporting to represent Issaenko: Extensions must be requested formally through letter or motion—not by phone. For the Court to conduct itself otherwise would cause it to give an informal, advisory, and speculative order, which is not appropriate.

To the extent Issaenko seeks to relitigate Chief Judge Tunheim's decisions regarding whether an employment decision was "quasi-judicial," and whether her copyright infringement claim was appropriately dismissed, those matters are not before the Court. *See* (*id*. at 16–19, 28 n.18). Further, Chief Judge Tunheim has already denied Issaenko's request to file a motion for reconsideration. (Order Dated Dec. 8, 2015) [Doc. No. 104].

---

[11] Because the Court finds that the tortious interference claim should be dismissed based on the qualified privilege defense, the Court need not address Defendants' argument that the "tortious interference claim cannot survive independent of the dismissed defamation claim," nor Issaenko's argument to the contrary. *See* (Mem. in Supp. at 9); (Mem. in Opp'n at 13–15, 19–29)

17

Finally, to the extent Issaenko argues that she should "be allowed to amend her complaint to include the most recent allegations," that matter is likewise not before the Court. *See* (Mem. in Opp'n at 22 n.14).

For the foregoing reasons, the Court recommends that the Motion for Judgment on the Pleadings be granted to the extent it seeks dismissal of the tortious interference claim against Lawrenz and LeBien.

### D.     Dismissal of Bazzaro's State Law Claims

Bazzaro requests that the Court decline to exercise supplemental jurisdiction over the remaining state law claims against her, promissory estoppel, and tortious interference. (Mem. in Supp. at 10); *see also Issaenko I*, 57 F. Supp. 3d at 1040. Bazzaro argues the tortious interference claim in this case "is essentially the same as the tortious interference claim that remains in state court against Bazzaro." (Mem. in Supp. at 10).

A court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 820 (8th Cir. 2001) (quoting 28 U.S.C. § 1367(a)). But a Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

Bazzaro has provided no documentation to the Court that the tortious interference claims at the state and federal levels are the same. Further, at the hearing, Bazzaro's counsel informed the Court that the state court case has now concluded following a motion for summary judgment. Thus, the Court is concerned that dismissal of Issaenko's claims in this case may have a dispositive effect on her ability to litigate her claims against Bazzaro. Therefore, the Court

recommends that the Motion for Judgment on the Pleadings be denied to the extent it asks the Court to decline to exercise supplemental jurisdiction over Issaenko's state law claims against Bazzaro.

## III. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants Frances Lawrenz ("Lawrenz") and Tucker W. LeBien's ("LeBien") Motion for Judgement on the Pleadings [Doc. No. 77] be **GRANTED in part** and **DENIED in part** as follows:

1. To the extent Defendants Lawrenz and LeBien seek dismissal of the tortious interference claim alleged against them, the Court recommends the Motion for Judgment on the Pleadings be **GRANTED** and that the tortious interference claim against them be dismissed with prejudice; and

2. The Court recommends the Motion for Judgment on the Pleadings be **DENIED** in all other respects.

Dated: January 25, 2016

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14

days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date**: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.